IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DWAYNE ANTHONY HAIRSTON, | ) | |
| Petitioner, | ) | Civil Action No. 7:21cv00441 |
| | ) | |
| v. | ) | |
| | ) | |
| WARDEN PRUTTING, | ) | By: Elizabeth K. Dillon |
| Respondent. | ) | United States District Judge |

**MEMORANDUM OPINION**

Dwayne Anthony Hairston, a Virginia inmate proceeding *pro se*, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the judgment entered against him by the Campbell County Circuit Court on February 14, 2017. The respondent has filed a motion to dismiss, to which Hairston has responded. For reasons explained below, the court will dismiss Hairston's petition as untimely.

I.   BACKGROUND

On July 19, 2015, Deputy O'Connor of the Bedford County Sheriff's Office arrested Hairston on two arrest warrants from Campbell County, one charging Hairston with forgery of a Keller-Williams Realty check drawn on SunTrust Bank in the amount of $1,843.38, and the other charging him with uttering the same check at SunTrust Bank on July 16, 2015. Following a preliminary hearing on December 15, 2015, the matter was certified to the grand jury. R.[1] at 1–2, 20. The grand jury indicted Hairston for both offenses on January 11, 2016. *Id.* at 61–62.

Following various pretrial motions, a jury trial commenced on September 8, 2016, but the defense moved for a mistrial, which motion was granted by the court. *Id.* at 133. Trial re-

---

[1] Citations to "R." refer to the records of the Campbell County Circuit Court in *Commonwealth v. Hairston*, Record No. CR15-439, at the page numbers handwritten in the bottom center of each page.

commenced before a new jury on October 20, 2016, at which the following evidence was presented:

Amanda Robertson, a teller at SunTrust Bank on Timberlake Road in Campbell County, testified that Hairston presented a check to be cashed, drawn on the Keller-Williams Realty Company's back account on July 16, 2015.  When requested to do so, Hairston provided  his driver's license.  Although the bank account and routing numbers on the check were correct, and the name of the signatory was the proper name, something about the check did not look correct. She went to the back and phoned the company to verify the check.  After the phone call, she copied the check and Hairston's identification, and then told him that she could not cash the check.  She kept the check, and Hairston left the bank.  Trial Tr., 97–112.

Crystal James then testified that she had worked at Keller-Williams Realty for eight years, and she was the sole person responsible for issuing checks for the company, and then the checks would be signed by one of the three owners.  On July 16, she received a call from SunTrust Bank asking about a check dated July 14, 2015, payable to Dwayne Hairston, in the amount of $1843.38.  James testified that she did not issue the check, did not know Dwayne Hairston, and the company had never owed money to or done business with Hairston.  *Id.* at 113–119.

James' testimony was followed by Stacey Powell, the person whose name was signed to the unauthorized check.  Powell testified that although the signature looked a lot like hers, it was not hers, and she had not signed the check.  In fact, Powell had been in Austin, Texas, the entire week that encompassed July 14 and July 16, and she had not signed any checks that entire week. *Id.* at 120–127.

Finally, Deputy O'Conner[2] testified that he was called to investigate an unauthorized check from Keller-Williams on July 16.  He went to the realty company's office in Forrest, Virginia, and spoke with Ms. James.  He also obtained the check and copy of the driver's license from Ms. Robertson at SunTrust Bank.  The bank's security system also had photographs of Hairston in the bank, at the teller's window, and leaving the bank.  While O'Conner was still at Keller-Williams, dispatch informed him that another business in the same office park had called about unauthorized checks that had been cashed.  He went to that business, Integrated Technology Group (ITG), and learned that five checks, totaling over $13,000,  all dated July 14, 2015, and payable to Dwayne Hairston, had been cashed on July 16 by five different branches of Bank of the James in the Bedford area, where ITG's accounts were located.  None of the checks were authorized, and none had been signed by the appropriate signatory of the business.

O'Conner located Hairston and brought him to Bedford County for questioning on July 18, 2015.  He read Hairston his *Miranda* rights and recorded the interview, which lasted between 45 minutes and an hour.  Over defense objection, portions of the video were played for the jury, in which Hairston said that his employer, Thomas, and another man, A.T., picked him up on July 16 and drove him to several banks to cash checks.  Thomas told him the checks were to replace equipment that had been stolen from his business.  Thomas paid $200 to Hairston for each check that Hairston cashed, which was supposed to be for past wages that Thomas owed Hairston. Hairston cashed each check at a different location.  The first four checks were cashed at different branches of Bank of the James.  SunTrust did not cash the check he took there.  The last check was then cashed at a Bank of the James branch.  Hairston told O'Conner he was ignorant and did

---

[2] The arrest warrant was signed by arresting officer O'Connor.  The trial transcript spelled the witness' name O'Conner.  Presumably, this is the same person, but the court is spelling his name as O'Conner when discussing the trial testimony, to match the transcript.

not know or suspect that anything was wrong with the checks, until SunTrust would not cash one. *Id.* at 128–142.

For the defense, counsel introduced Ronald Morris, a self-employed forensic document examiner who had opened his own business when he retired from the Secret Service after working 24 years in their Forensic Documents Division as a certified forensic document examiner. After being qualified as an expert witness, Morris explained how he analyzed handwriting and identified unconscious patterns in Hairston's writing that were not present in the signature on the check and patterns in the signature on the check that were not present in Hairston's writing samples. He opined that there was no evidence that Hairston signed Stacey Powell's name on the check. *Id.* at 150–179.

Finally, Hairston testified on his own behalf, against the advice of counsel. His testimony largely repeated what had been on the videotaped interview. He stated that he trusted Thomas, who was supposed to be a minister, and did not dream that Thomas would have him cash forged checks and leave him holding the bag for it. He volunteered that he had been charged in Bedford for the five ITG checks and had pled guilty, because he felt bad about being duped. Other than the convictions in Bedford, he admitted he had 11 prior felonies, for which he had already paid his debt to society. Hairston's testimony was difficult to follow, because he gave long speeches in response to questions, often non-responsive, and spoke out of turn when upset. He also referred to the prosecution as "a racist court." He wanted to address the jury himself, without answering questions from his attorney, which the court explained that he could not do. *Id.* at 181–224.

After jury instructions and closing argument, the jury deliberated and returned a verdict of guilty on both charges. Other than 16 certified copies of Hairston's prior convictions, the

parties presented no evidence at the sentencing hearing. After further deliberations, the jury recommended a sentence of three years for forgery and five years for uttering. R. at 253–254. After consideration of a presentence report and sentencing guidelines, which recommended a total sentence range of two years to five years, two months, and a midpoint of four years, one month, the court imposed the sentence recommended by the jury, followed by three years suspended for three years of supervised release. The court entered the amended final judgment order on February 14, 2017.

The Court of Appeals of Virginia granted Hairston's petition for appeal, which challenged the court's admission over defense objection of evidence about the five forged ITG checks in Bedford. In an unpublished opinion, the court affirmed the conviction. *Hairston v. Commonwealth*, No. 0282-17-3, 2018 WL 1720690 (Va. Ct. App. Apr. 10, 2018). The Supreme Court of Virginia refused his petition for appeal and denied his petition for rehearing on February 1, 2019. *Hairston v. Commonwealth*, No. 180632 (Va. 2019).

In March 2019, Hairston filed a state petition for habeas corpus in the Supreme Court of Virginia. He alleged ineffective assistance of counsel for failing to object to the prosecutor's prejudicial acts against him, failing to have the prosecutor removed from the case, and failing to challenge the multi-jurisdictional evidence offered by the prosecution. He also argued that the court and the prosecutor committed an abuse of process by allowing evidence of the forged checks in Bedford, that the court erred in failing to give a limiting instruction on the purposes for which the evidence of the forged checks in Bedford could be considered, and that the evidence was insufficient to support the conviction. Finally, he alleged that the trial court, prosecutor, deputy sheriff, and defense counsel conspired to deprive him of his due process and equal protection rights. The court found no ineffective assistance of counsel. The court declined to

reconsider the admissibility of the checks because that issue had been fully litigated on direct appeal.  The court denied the remaining claims, including abuse of process, failure to give a limiting instruction, and sufficiency of the evidence, on the ground that these issues could and should have been raised at trial and on direct appeal, but were not, and therefore, they were defaulted under the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974).  The court issued its opinion on November 25, 2019.

On June 4, 2021, Campbell County Circuit Court docketed Hairston's motion to vacate judgment, alleging that the conviction violated his right against double jeopardy.  The court docketed dismissal of the motion on June 7, 2021,  for lack of jurisdiction under Rule 1:1 of the Rules of the Supreme Court of Virginia (the 21-day rule).  Hairston did not appeal.  On August 4, 2021, Hairston filed the current § 2254 petition, presenting the following claims:

1. Ineffective assistance of counsel in failing to request a limiting instruction regarding the purpose for which the Bedford forged checks could be considered;

2. Double jeopardy; and

3. Prosecutorial misconduct and abuse of process in using inadmissible evidence.

## II.  DISCUSSION

As amended by the Antiterrorism and Effective Death Penalty Act, the federal habeas statutes require state prisoners to meet several procedural requirements before a federal court may grant relief in habeas cases.  First and foremost, the petitioner must file his claim timely, generally within one year from the date on which the state court judgment became final.  28 U.S.C. § 2244(d)(1)(A).  The one-year statute of limitations is tolled while a properly filed application for State post-conviction or other collateral review of the judgment is pending in state court.

A state court judgment becomes final at the conclusion of direct review or the expiration of the time for seeking such review.  The Supreme Court of Virginia denied Hairston's petition for rehearing on February 1, 2019.  Although he had 90 days in which to file a certiorari petition with the United States Supreme Court, he did not do so.  Accordingly, his judgment became final 90 days after February 1, 2019, or May 2, 2019.  That is the day that his federal statute of limitations would have begun, but his state habeas was already pending at that time, which tolled the statute.  His state habeas petition was dismissed November 25, 2019, and thereafter, the statute of limitations began to run, expiring a year later, on November 25, 2020.  His federal petition was filed August 4, 2021, almost nine months past the deadline.

Nor can the motion to vacate filed in the circuit court in June 2021 afford him any relief. The statute of limitations had already run November 25, 2020, and a post-conviction motion filed after the expiration of the statute does not revive the federal statute.  *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (holding that a state post-conviction motion filed after expiration of the limitations period cannot toll the period, because there is no period remaining to be tolled).

Other than statutory tolling, two possible bases remain for considering Hairston's petition despite its untimeliness:  Equitable tolling and the actual innocence gateway to prevent a miscarriage of justice.  Hairston has asserted that he was delayed in filing because his legal paperwork was lost when he transferred to a new facility in December 2019.  Pet. at 14, Dkt. No. 1.  In his response to the motion to dismiss, he also alleges a miscarriage of justice because of the Commonwealth's conduct.  Hairston's claims do not satisfy either exception.

The court may equitably toll the statute of limitations if (1) the petitioner has been pursuing his rights diligently and (2) some extraordinary circumstance prevented his timely filing.  Being transferred to a new facility, losing legal paperwork, and limited access to the law

library are not extraordinary circumstances. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004); *King v. United States*, No. 3:18cv20, 2019 WL 3543871, at \*2 (N.D. W. Va. July 18, 2019) (prison transfers do not amount to extraordinary circumstances that bar prisoners from filing a petition for habeas corpus). Because Hairston has not shown extraordinary circumstances that prevented him from filing, he is not entitled to equitable tolling.

The fundamental miscarriage of justice exception is available only in the rare case where a petitioner presents new, reliable evidence of actual innocence and constitutional error at trial, such that in light of all evidence, new and existing, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). Hairston has not proffered any new evidence, scientific or otherwise, of actual innocence. Accordingly, he cannot prevail on this argument, either.

Because his petition was filed outside the statute of limitations and none of the exceptions apply, the court will dismiss Hairston's petition as untimely.

### III. CONCLUSION

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may only issue if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the

action states a debatable claim of the denial of a constitutional right.  Hairston has not made such showings in this case.

For the reasons stated above, the court will grant the respondent's motion to dismiss, dismiss the petition for writ of habeas corpus, and deny a certificate of appealability.

An appropriate order will be entered.

Entered: December 6, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge